HOUSTON & TEXAS CENTRAL RAILROAD COMPANY v. O. L. MAYFIELD.

Decided November 27, 1909.

1.—Personal Injuries—Uncoupling Cars—Selection of Dangerous Method—Charge.

Under the evidence the issue being sharply drawn whether a train of cars was standing still or moving at the time a brakeman went between two of the cars to uncouple them and was injured while so doing, and the jury having found in effect that the train was standing still, and it appearing that it was customary and proper for the brakemen to go between the cars for the purpose of uncoupling them when they were standing still, and the court having made plaintiff's right of recovery depend upon the cars being still, it was not reversible error for the court to refuse to give a charge requested by the railroad company authorizing a verdict for the company if the jury found that plaintiff went between the cars to uncouple them while they were moving instead of using a lever provided for that purpose.

2.—Same—Refusal of Requested Charge.

In a suit for damages for personal injuries received while uncoupling cars, plaintiff having based his right of recovery upon the fact that the train had stopped in obedience to a stop signal given by him and was standing still when he went between the cars but was afterwards set in motion by the engineer, and the court having in its main charge limited plaintiff's right to recover to a finding by the jury that plaintiff gave a stop signal and that the train did stop and that plaintiff believed it had stopped in obedience to his signal, it was not error for the court to refuse a charge requested by the defendant to the effect that it was the duty of the plaintiff to assure himself that his stop signal had been seen and obeyed before he went between the cars. Having given the stop signal and the train having stopped, plaintiff had a right to presume that it stopped in obedience to his signal.

3.—Same—Negligence and Contributory Negligence—Charge.

In a suit for damages for personal injuries received by a brakeman while uncoupling cars, charges upon negligence and contributory negligence considered and approved.

Appeal from the District Court of Ellis County. Tried below before Hon. F. L. Hawkins.

*Baker, Botts, Parker & Garwood, R. S. Neblett* and *Supple & Harding,* for appellant.

*Randell & Randell* and *Farrar & Pierson,* for appellee.

RAINEY, CHIEF JUSTICE.—The following statement taken from appellant's brief is substantially correct and we adopt same, to wit:
· "This is a suit for personal injuries alleged to have resulted from the negligent movement of a switch engine and cars by appellant in its yards at Ennis, Texas, on April 22, 1907. Appellee alleges, in sub-

stance, that on April 22, 1907, he was in the employ of appellant as switchman, and while acting in a cautious manner in the performance of his duties his left arm was crushed, necessitating amputation, and his nervous system and all his vital organs were damaged. The acts of negligence charged are: 1st. That in switching the cars appellant failed to see appellee, and failed to see his signal in reference to the movement of the engine and cars; that appellant caused said cars to violently and unexpectedly move backwards and forwards, and irregularly stop and start, close up and clash in an improper, unsafe and dangerous manner, and failed to stop and start at the proper times and places. 2d. That the track, switches, switch-stands, grounds and yards were improperly constructed, old, worn and out of repair, and were so constructed as to prevent the seeing and hearing of signals. 3d. That the cars, cross-beams, bumpers, drawheads, connecting and coupling apparatus for uncoupling said cars, were improperly constructed, out of place, broken, old, worn, dangerous, defective and unfit for use. That by reason of each and all of said acts and omissions, which were known to appellant but not to appellee, he was caught and crushed between the cars.

"Appellant interposed general and special exceptions, and pleaded: 1st. General denial. 2d. Contributory negligence, in that appellee voluntarily went between moving cars to uncouple them when the danger was obvious. 3d. Assumed risk, in that appellee voluntarily went between moving cars to uncouple same, in violation of appellant's rules, knowing said act exposed him to extraordinary danger. 4th. Assumed risk, in that appellee, having charge and control of the work, voluntarily selected a dangerous method of performing the same, and voluntarily chose a dangerous place to do his work, when a safe method and place had been provided by appellant. 5th. Assumed risk, in that appellee went between the cars before they became still, and was injured by reason of 'slack.'

"Trial was had, resulting in a verdict and judgment in favor of appellee in the sum of $11,000."

As conclusions of fact we adopt the statement made by appellant as follows: "The testimony shows that appellee was, on the 22d day of April, 1907, the foreman of appellant's switching crew in its yards at Ennis, Texas; that he had control of the engine and crew, directed their movements, and was then engaged in switching and placing cars in the yards, had been so employed for about two years, and was experienced in the work. At the time he was injured he was backing about eleven cars from the main lead, which runs northwest, north on to the sidetrack No. 14, leading from the main lead. On this sidetrack he desired to place and leave the rear or north car of the backing train. This rear car was an S. P. car; the one coupled to it was a Rock Island car, which he desired to bring out and place on sidetrack No. 11. It was the duty of appellee to cut off this rear car from the train by uncoupling it. The cars were equipped with automatic couplings, coupling by impact, an automatic coupler being on the end of each car; when coupled the coupler was held by a lock-pin which went through each coupler; this pin is attached to a chain which connects with a lever extending out to the edge of the car, called a lift lever,

and will uncouple the cars by being lifted or pulled by the switchman without the necessity of going between the ends of the cars; it is so arranged that these levers extend each way from the coupling, so that one lever is upon each side of the cars. Appellee was working on the west side of the train, and the lift lever on that side failed to uncouple the cars when he pulled it, because the little clevis which connected the lock-pin with the lift-chain was broken, and therefore disconnected from the lever which controlled the coupler of the rear or S. P. car. When appellee ascertained this, he stepped between the ends of the cars to pull the pin from the S. P. car with his hand, but could not get hold of the pin. He then reached across to pull the pin from the coupler of the Rock Island car, and while trying to pull this pin with his hands his left arm was caught between the buffers and crushed. Appellee testified that the cars had stopped, in obedience to his signal, when he went between them, and that they moved again without his permission, injuring him; that 'If I had known my arm was between the buffers, even if I had not expected the cars to move, I would not have put it there. I never noticed a bumping coming along up the line of cars; if I had heard it I would have got out.' He also testified: 'Not many freight cars are equipped with buffers; they are dangerous; man-killers is a good name for them; they are about waist high to me; are on each side of and above the drawhead or coupling apparatus; are about ten inches in length, setting against the ends of the cars, and five inches by seven inches in breadth, and come square together.'"

The appellant complains that the court erred in refusing to instruct the jury as requested by defendant's third special charge, as follows: "If you believe from the evidence that the plaintiff was unable to uncouple the cars in question by means of the lift lever upon the west side of the train, and that he had control of the train and could have gone on the opposite side of the train and uncoupled the same by means of a lift lever upon the east side, and that such last-named way would not have exposed him to danger by causing him to go between the cars to uncouple the same, and that he voluntarily chose to go between the cars to uncouple the same with his hands, and that by reason of his choice of ways of doing his work his injury resulted, then you will find for the defendant."

It seems the main issue on the trial below was whether the cars had stopped or were moving when appellee went between them to uncouple them, appellee testifying that the cars had stopped in obedience to his signal, and appellant's witnesses testifying that they were moving. The rule of appellant prohibited employes from going between the cars while moving. The evidence shows that it was the custom of employes, and proper for them, to go between the cars for the purpose of uncoupling them when they were still. With this issue sharply drawn, the court by its charge made the right of recovery to depend upon the cars being still when appellee went between them. The jury by its verdict, in effect, found that the cars were still when the appellee went between them. Under these circumstances, we do not see that appellant was injured by the failure to give requested charge, for if the cars were *still* no question as to a safe or dangerous way arose, and the court was

not required to submit such an issue. The train having stopped, it was negligence in the engineer to again start it to moving without a signal to that effect, and none was given.

The appellant complains that the court erred in not giving the requested charge, as follows: "You are instructed that it was the duty of the plaintiff, if he gave a stop signal just before he went between the cars to uncouple the same, to see that his said signal had been seen and obeyed before he went between the said cars, and if you believe that he did give such signal and went between the said cars without knowing that it had been seen or obeyed, and that such act was negligence and caused or contributed to his injury, then he can not recover, and you will find for the defendant."

Rule 308 of the railway company introduced in evidence is as follows: "It is dangerous to assume that signals given to the engineer or fireman have been seen, or, if seen, that they will be obeyed, when obedience to those signals on the part of the engineman or fireman is essential to the safety of an employe in the performance of his duty. He must know that the signal has been seen, understood and obeyed before placing himself in a dangerous position. Otherwise he assumes all risk of danger arising from any misunderstanding or disregard of the signals."

The appellee claimed no right of recovery except as based on the fact that the train had stopped after he had given the stop signal, and the train was standing still when he endeavored to uncouple the cars by going in between them. The court, in effect, instructed the jury that in order for plaintiff to recover they must believe that he gave a stop signal, and that the train did stop, and that he believed they stopped in obedience to his stop signal. Having given the stop signal, and the train having stopped, he had the right to presume his stop signal was obeyed, therefore his conduct was in strict observance of said rule, and said requested charge was substantially covered by the court's charge, and no substantial injury resulted to appellant from the failure to give the special charge.

The fourth assignment of error presented is: "The court erred in instructing the jury, as set forth in the seventh paragraph of the general charge, as follows: 'Now, having in mind the foregoing instructions, if you believe from the evidence that plaintiff was in the employment of the defendant company as a switchman, and that while engaged in switching cars in the switch yards at Ennis it became necessary for him to cut off a car from the rear of a string of cars, and that after giving a signal for the cars to move back on to track 14 he gave the stop signal, and that the chain connecting the lift-lever with the coupling-pin was broken, and that the train stopped, and that plaintiff believed it had stopped in obedience to his stop signal, and that plaintiff went in between the cars to pull the pin with his hands; and you further believe that the servants working with plaintiff failed to see his stop signal (if given), and that such failure (if any) was negligence on their part, and that the engineer in charge of the engine caused the train to move backward and caught his arm between the bumpers on the cars and injured him as alleged, and that such movement of the train was negligence; and you further believe from the evidence that

such negligence (if any) in moving the train after it stopped, if it had stopped, was the proximate cause of plaintiff's injury; and if you further find from the evidence that plaintiff was not himself guilty of contributory negligence which caused or contributed to his injury, you will find for plaintiff, unless you find for the defendant under some other instructions given you by the court."

Three propositions are presented under this assignment:

1st. "Recovery in a suit for damages is not authorized by the allegation and proof of an act or omission constituting negligence unless such negligence is the proximate cause of the injury, and it was error for the court to submit as a basis for recovery the issue whether it was negligence of the servants working with appellee to fail to see his signal, that not being the proximate cause of the injury."

2d. "It being elementary that plaintiff could not recover unless he was free from all negligence which caused or contributed to his injury, it was reversible error for the court to instruct the jury to find for plaintiff in the event they found certain grouped facts, omitting any reference to the essential fact of whether plaintiff was guilty of negligence causing or contributing to his injury."

3d. "It being the exclusive province of the jury to determine the existence or non-existence of facts, it was an erroneous invasion of the province of the jury for the court to assume the material fact in issue —that plaintiff was not guilty of any negligence causing or contributing to his injury."

We are of the opinion that none of these propositions is well taken. It was a question for the jury to determine whether or not it was negligence in the servants working with appellee to fail to see his signal and whether or not such negligence was the proximate cause of the injury. The charge, if anything, was more onerous on appellee than necessary, as all the acts of negligence were coupled with the conjunction *and,* by which the charge made it necessary that all of said acts existed before a recovery could be had. Second. The court charged in another paragraph of his charge on contributory negligence, and if appellant desired a charge along the line suggested, it should have requested it. Third. We do not agree with counsel that the charge assumes "that appellee was proceeding in a proper, careful and correct manner to uncouple the cars."

We have carefully considered the other assignments of error presented, not here discussed, and are of the opinion that none show reversible error. The judgment is affirmed.

*Affirmed.*

Writ of error refused.